## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

KRISTIN TERRIZZI, as parent and
natural guardian of M.T., a minor,                    Case No.

       Plaintiff,                                    Jury Trial Demanded

      v.

ACTON SCHOOL DEPARTMENT,
JONATHAN ROSS, BRANDON WARD,
CAROL WENDEL, inclusively,

       Defendants.

## COMPLAINT

Plaintiff Kristin Terrizzi, as parent and natural guardian of M.T. a minor, complains against Defendants Acton School Department ("ASD" or the "District"), Jonathan Ross ("Ross"), Brandon Ward ("Ward") and Carol Wendel ("Wendel") (together, "Defendants"), as follows:

### THE NATURE OF THIS ACTION

1.     This is an action arising from the abuse committed by the teachers and administrative staff at the Acton Elementary School ("Acton" or the "School") in the Acton School Department.

2.     Plaintiff's child, M.T., is a minor with the diagnosed disability of autism. M.T. suffered traumatic and severe injuries due to the Defendants' actions and failures to properly implement his approved educational program.

3.    Plaintiff seeks damages for Defendants' violation of M.T.'s Fourth Amendment rights, violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and violation of Title IX.

## THE PARTIES

4.    M.T. is a student at Acton Elementary School in the Acton School Department. Plaintiff at all material times relevant to this litigation has been, and is presently, a minor child.

5.    The Complaint is filed by and through Kristin Terrizzi ("Terrizzi"), the mother of the minor child, with the consent of M.T. Plaintiff is a resident of the State of Maine.

6.    Defendant Acton School Department ("ASD") is the school district responsible for educating the students of Acton, Maine. Defendant Acton School Department operates and supervises the public schools within the District, including Acton Elementary School.

7.    Defendant Jonathan Ross ("Ross") was at all times relevant to this litigation the superintendent of Action School District. Upon information and belief Ross resides in the State of Maine.

8.      Defendant Brandon Ward ("Ward") was at all times relevant to this litigation the principal of Acton Elementary School in the Acton School District. Upon information and belief Ward resides in the State of Maine.

9.      Defendant Carol Wendell ("Wendell") was at all times relevant to this litigation the school nurse at Acton Elementary School in the Acton School District. Upon information and belief Wendell resides in the State of Maine.

## JURISDICTION AND VENUE

10.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

11.      At all relevant times, Plaintiff Kristin Terrizzi and her minor child, M.T., were and are residents of the town of Acton, Maine.

12.      Defendant Acton School Department conducts business and is located within the town of Acton, Maine.

13.      The Individual Defendants, acting as employees of ASD, personally violated certain rights and policies, the effects of which were felt in the State of Maine.

14.      Venue in this action is properly in the District of Maine because the events relevant to this action occurred within the geographical confines of the District of Maine.

## FACTUAL ALLEGATIONS

### I.    ACADEMIC YEAR 2020-2021

15.    In August 2020, M.T. enrolled for kindergarten in ASD for the 2020-2021 academic year.

16.    Upon information and belief, ASD is a recipient of federal funding for its educational programs.

17.    ASD established an Individualized Educational Program ("IEP") for M.T. pursuant to the Individuals with Disabilities Education Act and parallel Maine law.

18.    M.T. qualified for an IEP under the disability category of autism.

19.    The IEP required ASD to provide M.T. with a 1:1 aide, as M.T. was a "bolter" and known for his propensity to elope.

20.    Under his IEP, M.T. was not to be left unsupervised while on the playground.

21.    M.T. was not allowed on playground equipment without his 1:1 aide present.

22.    In September 2020, upon information and belief, one or more of the Defendants expressly allowed M.T. to participate in recess activities on playground equipment that involved his feet being off of the ground, in direct contradiction to the IEP.

4

23.    While M.T. was on playground equipment unsupervised and without his 1:1 aide, he

fell off the playground equipment and suffered a severe injury as a result.

24.    Surgery on M.T.'s arm was required. M.T. had three bolts placed in his elbow, which were later removed.

25.    M.T. has suffered significant damages as a result of the Defendants' failure to implement his IEP.

26.    As a result of Defendants' inability to provide for M.T.'s safety while in ASD's care, coupled with M.T. recovering from multiple surgeries, Plaintiff removed M.T. from Acton Elementary School.

27.    ASD sent Plaintiff a truancy letter in January 2021.

28.    Plaintiff then provided ASD with a letter of intent to homeschool.

29.    ASD has had no further contact with Plaintiff regarding the September 2020 incident.

30.    Plaintiff homeschooled M.T. for the remainder of his kindergarten year and for his first-grade year (2021-2022). Plaintiff reenrolled M.T. in ASD for second grade (2022-2023).

## II.    ACADEMIC YEAR 2024-2025

31.    M.T. was enrolled in ASD in fourth grade for the 2024-2025 school year.

32.    On September 18, 2024, Plaintiff sent an email to ASD advising that a female student had touched M.T. inappropriately.

33.    ASD took no action.

34.    ASD failed to perform a Title IX investigation as required by federal law.

35.    On October 7, 2024, M.T. was called down to the office for unknown purposes.

36.    In the office, without justification, Defendants Ward, Ross, and Wendell requested that M.T. pull down his pants and expose himself.

37.    M.T. was scared.

38.    Defendants again asked M.T. to pull down his pants and he reluctantly complied.

39.    Defendants Ward, Ross, and Wendell looked at M.T.'s exposed body.

40.    Acton has a nurse's office for medical care of students when needed.

41.    Had this been a medical concern, M.T. could have been brought into the nurse's office. Instead, he was asked to expose himself to multiple adults in the principal's office.

42.    M.T. was crying and scared but followed the Defendants' directions and exposed himself.

43.     After the exposure, Defendant Ross stated to M.T., "See, that wasn't so bad."

44.     Upon learning about this incident, Plaintiff immediately reached out to Defendant Ross. To date, he has failed to respond to Plaintiff.

45.     Neither Plaintiff nor M.T. has received an explanation as to why this occurred.

46.     Plaintiff reached out to York County Sheriff's department and spoke with Cathryne L. Mone by telephone.

47.     ASD's speech therapist  is a good friend of the  sheriff.

48.     The sheriff went to the ASD administration prior to taking the statement of Plaintiff regarding the incident.

49.     Upon information and belief, the sheriff's department advised ASD that no charges would be brought prior to the taking of Plaintiff's statement concerning the incident.

50.     Plaintiff proceeded to the sheriff's department to make an official statement.

51.     Plaintiff made a statement to the sheriff's department on a yellow piece of paper.

52.     No official report form was provided.

53.     Plaintiff was not provided with a report number.

54.     Following the exposure incident, Plaintiff again pulled M.T. from ASD.

55.     M.T. is no longer receiving the educational services he requires for his disability due to Defendants' actions.

56.     M.T. has suffered mentally, emotionally, and physically due to Defendants' actions and failures to act.

### *Respondeat Superior and Agency*

57.     Under Federal and Maine law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

58.     At all times relevant to this action, upon information and belief, all individual Defendants were employed in a capacity by the school district. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment.

59.     At the time of this Complaint, only the individual Defendants themselves are aware of the exact role that each individual Defendant played in the events that are the subject of the lawsuit. For this reason, only the individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

**CAUSES OF ACTION**

**FIRST COUNT – VIOLATION OF 42 U.S.C. § 1983**
**Fourth Amendment Violations**
(*Plaintiff v. Individual Defendants*)

60.     Plaintiff restates the allegations contained in paragraphs 1 through 59. 42 U.S.C. § 1983 prohibits the deprivation of constitutional rights or rights secured by the laws of the United States by persons acting under the color of state law.

61.     On October 7, 2024, Defendants Ross, Ward and Wendell subjected M.T. to a strip search on school premises.

62.     At the time of the strip search, all of the individual Defendants acted under color of state law.

63.     The strip search was conducted without a warrant.

64.     Upon information and belief, the strip search was conducted without reasonable suspicion that it would produce evidence of a violation of law or school rules.

65.     The strip search was excessively intrusive in light of M.T.'s age and sex and the nature of the alleged infraction.

66.     To date, Plaintiff has not been notified of any infraction by M.T.

67.     As a result of the strip search, M.T. suffered emotional distress, humiliation, and a violation of constitutional rights.

WHEREFORE, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, physical harm, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b)    Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

(c)    Grant such other and further relief as justice may require.

## SECOND COUNT - VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### (*Plaintiff v. Action School Department*)

68.    Plaintiff restates the allegations contained in paragraphs 1 through 59.

69.    The Americans with Disabilities Act extends its protections to public schools through Title II. 42 U.S.C. §§ 12131 *et. seq.*

70.    As a public school, ASD is subject to Title II of the ADA.

71.    M.T. is a qualified individual with a disability under the ADA by virtue of his autism. 42 U.S.C. § 12131(2).

72.    M.T.'s disability limits major aspects of his life, making many everyday activities difficult for him.

73.     Despite his disability, M.T. succeeded in classes when Defendants implemented his IEP.

74.     Title II of the ADA prohibits the discrimination of a person on the basis of disability.

75.     ASD discriminated against M.T. when it did not implement his IEP, effectively denying him access to an equal education and causing him injury.

76.     Defendants created M.T.'s IEP and therefore possessed full knowledge of his disability.

77.     Defendants discriminated against M.T. on the basis of his disability by intentionally ignoring the services and accommodation required by his IEP.

78.     As a direct and proximate result of Defendants' unlawful discrimination, M.T. has sustained and continues to sustain injuries and damages in the form of broken bones, and the inability to gain his education which will affect his future personal, academic and professional career.

79.     Plaintiff's claim is not subject to exhaustion under 20 U.S.C. § 1415(l), as Plaintiff's ADA claim seeks compensatory damages for discriminatory conduct, relief that the Individuals with Disabilities Education Act ("IDEA") cannot provide. *See Perez v Sturgis Pub Sch*, 598 U.S. 142, 142; 143 S. Ct. 859; 215 L. Ed. 2d 95, 97 (2023).

WHEREFORE, Plaintiff prays that this Court:

(a)    Enter judgment against Defendant ASD and in favor of Plaintiff for actual damages for personal injuries and financial loss in an amount to be determined at trial;

(b)    Enter judgment against Defendant ASD and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)    Grant such other and further relief as justice requires.

### THIRD COUNT - VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
### (*Plaintiff v. Action School Department*)

80.    Plaintiff restates the allegations contained in paragraphs 1 through 59.

81.    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all entities receiving federal financial assistance from discriminating based on disability. Section 504 states, in relevant part:

> *No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).*

82.    As a public school receiving federal funding, Defendant ASD is subject to Section 504 of the Rehabilitation Act.

83.    M.T. qualifies as an individual with a disability due to his autism.

84.    M.T.'s disability limits major aspects of his life, making many everyday activities difficult for him.

85.    Despite his disability, M.T. was able to succeed in classes when ASD implemented his IEP.

86.    Defendant ASD discriminated against M.T. when it failed to implement his IEP, effectively denying him access to an equal education and causing him injury.

87.    Defendant ASD created M.T.'s IEP and therefore was fully aware of his disability.

88.    Defendant ASD discriminated against M.T. on the basis of his disability by intentionally ignoring his IEP.

89.    As a direct and proximate result of Defendant ASD's unlawful discrimination, M.T. has sustained and continues to sustain personal injuries and damage in the form of broken bones, and the inability to gain his education which will affect his future personal, academic, and professional career.

90.    Plaintiff's claim is not subject to exhaustion under 20 U.S.C. § 1415(l), as Plaintiff's section 504 Act claim seeks compensatory damages for discriminatory conduct, relief that the IDEA cannot provide. *See Perez v Sturgis Pub Sch*, 598 U.S. 142; 143 S. Ct. 859; 215 L. Ed. 2d 95, 97 (2023).

WHEREFORE, Plaintiff prays that this Court:

(a)    Enter judgment against Defendant ASD and in favor of Plaintiff for personal injury and financial loss damages in an amount to be determined at trial;

(b)    Enter judgment against Defendant ASD and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c)    Grant such other and further relief as justice requires.

## FOURTH COUNT – VIOLATION OF TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972
### (*Plaintiff v. Action School Department*)

91.    Plaintiff restates the allegations contained in paragraphs 1 through 59.

92.    Title IX of the Education Act Amendments of 1972 (20 U.S.C. § 1681) prohibits discrimination based on sex in educational institutions receiving federal financial assistance.

93.    At all times relevant to this action, ASD was a public school receiving federal funds.

94.    34 C.F.R. §106.44 provides that such institutions must respond affirmatively when a school official with the ability to take corrective measures receives actual knowledge that a student may have been discriminated against on the basis of sex.

95.    The sexual harassment that M.T. endured deeply traumatized him.

14

96.     This trauma was compounded by the fact that M.T. was forced to share a classroom with the offender on a daily basis.

97.     The sexual harassment that M.T. endured had such a negative effect on his mental state that it effectively deprived him of the educational benefits provided by ASD.

98.     The deprivation of M.T.'s educational benefits manifested itself in numerous ways including, but not limited to, M.T. experiencing extreme emotional damage and trauma by being exposed to his offender on a daily basis. This emotional burden completely disrupted M.T.'s ability to learn.

99.     Defendant ASD had actual knowledge of the ongoing sexual harassment of M.T. as it was reported by Plaintiff.

100.    Federal law required Defendant ASD to initiate a Title IX investigation.

101.    ASD acted with deliberate indifference regarding the sexual harassment by failing to initiate a Title IX investigation.

102.    Defendant ASD had, and has, the ability to exercise substantial control over both the offending student and the environment in which the sexual harassment and assault occurred.

103.    The offending student's sexual harassment and assault were severe, pervasive, and objectively offensive.

15

104.   Defendant ASD acted with deliberate indifference in avoiding its obligations under Title IX.

105.   As a result, ASD denied M.T. an equal opportunity to receive his education.

106.   The emotional and physical harm that M.T. has suffered, and will continue to suffer, was caused directly and proximately by Defendants' unlawful conduct.

WHEREFORE, Plaintiff prays that this Court:

(a)    Enter judgment against Defendant ASD and in favor of Plaintiff for compensatory damages in an amount to be determined at trial;

(c)    Enter judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d)    Grant such other and further relief as justice requires.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues asserted in this action.

Date: April 15, 2025

Respectfully Submitted,

*/s/ Richard L. O'Meara*
Richard L. O'Meara
MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME 04104-5085
(207) 773-5651
romeara@mpmlaw.com

Solomon Radner, Esq. (*pro hac vice to be applied for*)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com

Counsel for Plaintiff